FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 14, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| JOSHUA C. BUTLER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>G4S SECURE SOLUTIONS (USA), INC.,<br><br>Defendant. | NO: 2:19-CV-194-RMP<br><br>ORDER RESOLVING DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION TO STRIKE |

BEFORE THE COURT is Defendant G4S's Motion to Dismiss for Failure to State a Claim, ECF No. 12. In his Response to Defendant's Motion, at ECF No. 23, Plaintiff Joshua Butler made a Motion to Strike pursuant to Federal Rule of Civil Procedure 12(f), which the Court now addresses. The Court has considered the record, the briefing, the relevant legal precedent, and is fully informed.

## BACKGROUND

Plaintiff Joshua Butler began working for Defendant G4S Secure Solutions ("G4S") in February of 2015 as a security officer. ECF No. 1 at 2. G4S contracts with businesses to provide security services. *See id*. While a G4S employee, Mr.

Butler worked at McCain Foods USA, Inc. ("McCain"), a company that contracted with G4S.  *Id.*  Until about August of 2016, Mr. Butler's site supervisor at McCain was Josh Charmley, a G4S employee.  *Id.* at 3.  However, when Mr. Charmley was absent, Mr. Butler would be required to interact directly with G4S's area supervisor, Richard Harden.  *See id.* at 2–3.  From about June 2016 through July 2017, Mr. Butler frequently worked 60 hours or more per week at McCain because of a G4S employee shortage.  *Id.* at 3.

In spring of 2016, when Mr. Charmley was on vacation, Mr. Butler worked directly with Mr. Harden.  *Id.*  When they first met in person, Mr. Harden referred to Mr. Butler as "boy" several times.  *Id.*  Mr. Butler is an African American man, and Mr. Harden is Caucasian.  *Id.* at 2–3.  Additionally, during Mr. Charmley's absence that spring, Mr. Butler was responsible for creating a schedule for the McCain G4S security employees.  *Id.* at 3.  After Mr. Butler created the schedule, Mr. Harden saw it and told Mr. Butler, "I didn't think you people were even capable of putting together something like that.  You coons impress me every day."  *Id.*  Mr. Butler reported these comments to Mr. Charmley when he returned from vacation.  *Id.*

Later that year, when Mr. Charmley was absent on medical leave, Mr. Harden mumbled in Mr. Butler's presence that Mr. Butler was "creating too much work for him," and said something like, "Fuck, man, you nigger."  *Id.*  Again, Mr. Butler reported this comment to Mr. Charmley.  *Id.*

In August of 2016, Mr. Charmley prepared to leave his position at G4S, and the company offered the position to Mr. Butler. *Id*. Mr. Harden stated to another G4S employee that he did not like Mr. Butler's "kind" and that he did not believe he was "fit for the position." *Id*. at 4. He then told the employee that he believed Mr. Butler was not a good fit for the job due to his race. *Id*. Additionally, Mr. Harden called Mr. Charmley and said that he didn't want "that nigger running shit." *Id*. Mr. Charmley informed Mr. Butler about this conversation. *Id*. According to Mr. Butler, learning that Mr. Harden did not want him to be a supervisor because of his race motivated him to accept the Site Supervisor position. *Id*.

When Mr. Butler began performing his job as Site Supervisor in November of 2016, Mr. Harden continued to use racial slurs, including "coon" and "nigger." *Id*. at 5. In September 2017, Mr. Butler emailed Mr. Harden's supervisor about the comments, but Mr. Harden's supervisor never responded. *Id*.

On or about October 1, 2017, after learning of Mr. Butler's complaint to his supervisor, Mr. Harden called Mr. Butler at approximately 12:15 a.m. *Id*. at 5. During the call, Mr. Harden asked, "What the fuck is your problem, nigger?" *Id*. Mr. Harden referred to Mr. Butler as "coon," "nigger," "boy," and "spook" during the conversation. *Id*. Again, Mr. Butler reported this behavior to Mr. Harden's supervisor via email. *Id*. at 6. Later, when Mr. Butler attempted to follow up in a telephone conversation with Mr. Harden's supervisor, the supervisor stated that he

had not received Mr. Butler's email complaint, and he ended the call before Mr. Butler could explain his complaint. *Id.* Although Mr. Harden's supervisor stated he would call Mr. Butler back, he never did. *Id.*

In February of 2018, Mr. Harden called Mr. Butler to discuss G4S's contract with McCain. *Id.* at 7. McCain had indicated that it was going to terminate its contract with G4S, and Mr. Harden asked Mr. Butler to save the contract if he could. *Id.* Mr. Butler did not save the contract, and told Mr. Harden that he would be interested in accepting a job at a different G4S location. *Id.* When it became clear that the contract would end, on or around March 2, 2018, Mr. Harden terminated Mr. Butler, stating, "I trusted you. I thought you were going to fix this. I gave you one job." *Id.* Mr. Butler alleges that Mr. Harden blamed him for losing the contract with McCain. *Id.* When Mr. Harden terminated Mr. Butler, he used the words "coon," "jiggaboo," and "boy," and called Mr. Butler "worthless." *Id.*

After he had been terminated from his position with G4S, Mr. Butler applied for and obtained a position with Securitas, the company that took over the security contract with McCain. *Id.* at 7–8. In his new position at Securitas, Mr. Butler makes a lower wage than the wage he earned at G4S. *Id.* at 8. Additionally, Mr. Butler asserts that G4S never paid him for approximately 100 hours of overtime, and that Mr. Harden told him that the unpaid overtime was "non-billable overtime." *Id.*

Mr. Butler alleges that he fully exhausted his administrative remedies through the EEOC before filing this action. *Id*. He asserts that Defendant G4S discriminated against him on the basis of his race in violation of Title VII and the Washington Law Against Discrimination (WLAD). *Id*. at 8–9. He has brought claims under both statutes for disparate treatment, hostile work environment, and retaliation. Mr. Butler also asserts a claim of unlawful wage withholding under RCW 49.52.050, and a claim of wrongful discharge in violation of public policy under Washington State law. *Id*. at 9.

In defense, G4S filed a Motion to Dismiss for failure to state a claim. *See* ECF No. 12. While G4S has labeled its Motion as a "partial" Rule 12(b)(6) motion, it is unclear which claims the company asks the Court to dismiss. In its Motion, G4S argues that the Complaint, in its entirety, should be dismissed because it is a "shotgun pleading." *Id*. at 5. Therefore, the Court will address the Motion as a motion to dismiss the entire Complaint.

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In reviewing the sufficiency of a complaint, a court accepts all well-pleaded allegations as true and construes those allegations in the light most favorable to the non-moving party. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citing

1  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031-32 (9th Cir.

2  2008)).

3       "To survive a motion to dismiss, a complaint must contain sufficient factual

4  matter, accepted as true, to 'state a claim of relief that is plausible on its face.'"

5  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v.*

6  *Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the

7  plaintiff pleads factual content that allows the court to draw the reasonable

8  inference that the defendant is liable for the misconduct alleged." *Id.* (citing

9  *Twombly*, 550 U.S. at 556).  However, "[r]ule 8(a) 'does not impose a probability

10  requirement at the pleading stage; it simply calls for enough fact to raise a

11  reasonable expectation that discovery will reveal evidence' to support the

12  allegations." *Starr v. Baca*, 652 F.3d 1202, 1214 (9th Cir. 2011) (quoting

13  *Twombly*, 550 U.S. at 556).

14                                    **DISCUSSION**

15  **I. Affirmative Defenses**

16       G4S moves to dismiss several of Mr. Butler's claims by arguing that its

17  affirmative defenses preclude Mr. Butler from properly stating them.  *See* ECF No.

18  12 at 6–8.  A district court can consider affirmative defenses on a motion to

19  dismiss.  *Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997).

20  "Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper

21  only if the defendant shows some obvious bar to securing relief on the face of the

complaint." *ASARCO, LLC v. Union Pacific R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014). For instance, while a district court may grant a Rule 12(b)(6) motion when the plaintiff's claim is barred by a statute of limitations, it may only do so when "the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). The court may only dismiss a complaint as time-barred if "it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Id*. (quoting *Supermail Cargo, Inc., v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)).

## A. Statute of Limitations

G4S has moved to dismiss the Title VII claims against it, arguing that Mr. Butler did not file a charge of discrimination with the EEOC within 300 days of the alleged unlawful activity. "The 'failure to file an EEOC charge within the prescribed 300-day period . . . is treated as a violation of a statute of limitations . . . ." *Fox v. Kitsap Cnty.*, No. Co6-5698RBL, 2009 WL 426315, at *6 (W.D. Wash. Feb 20, 2009) (quoting *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000)). Therefore, the company argues that the Title VII claims are time-barred and subject to dismissal.

In response to this argument, Mr. Butler has submitted the relevant EEOC Charge of Discrimination and the EEOC Notice of Charge of Discrimination. ECF No. 23-2 at 9, 18. In a motion to dismiss for failure to state a claim under Rule

12(b)(6), the Court generally may not consider documents and exhibits outside the pleadings. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). Usually, when a district court chooses to consider extrinsic evidence on a motion to dismiss, it is converted to a motion for summary judgment, and additional procedures attach. *See id*. However, there are two exceptions to this rule. *Id*. "First, a court may consider 'material which is properly submitted as part of the complaint' on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment.'" *Id*. (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *abrogated on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)). If the documents only are described in the complaint, rather than attached to the complaint, then "they may be considered if [their] 'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on them." *Id*. (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998)). Secondly, a court may consider any documents of which it may take judicial notice pursuant to Federal Rule of Evidence 201 when deciding a Rule 12(b)(6) motion to dismiss.

EEOC charge and notice forms are public records, of which this Court may take judicial notice. Additionally, these forms generally are considered integral to the complaint in Title VII actions. *See e.g.*, *Reed v. Md. Dept. of Human Resource*s, No. ELH–12–0472, 2013 WL 489985, at *5 (Feb. 7, 2013 D. Md.) (citing *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565 (2d Cir. 2006)).

Therefore, the Court considers these extrinsic documents, submitted in conjunction with Mr. Butler's Response to G4S's Motion to Dismiss.

Mr. Butler alleges that the adverse employment action taken against him, his termination, was taken on or about March 2, 2018. ECF No. 1 at 7. To comply with the 300-day limit, Mr. Butler would have needed to file his complaint with the EEOC by December 27, 2018. Mr. Butler signed an EEOC charge form on December 3, 2018. ECF No. 23-2 at 9. On December 13, 2018, an EEOC official signed a Notice of EEOC Charge, indicating that she had received Mr. Butler's complaint. *Id*. at 18. It appears that Mr. Butler filed another EEOC charge on February 5, 2019, also relating to the alleged discrimination he suffered at G4S. *See* ECF No. 12-6. G4S relies on this February 2019 form to argue that Mr. Butler's claim is time-barred. However, because Mr. Butler's first form was signed before the 300-day deadline, and because the EEOC provided notice of receipt before the 300-day deadline, the Court will not dismiss Mr. Butler's Complaint under Rule 12(b)(6) as time barred.

### B. *Ellerth* Affirmative Defense

G4S also argues in its motion to dismiss that its affirmative *Ellerth* defense precludes Mr. Butler from stating a claim. An employer-defendant may raise an *Ellerth* affirmative defense to avoid liability for workplace discrimination claims. This affirmative defense requires the employer to show, "(1) it exercised reasonable care to prevent and correct promptly any [] harassing behavior, and (2)

that the employee unreasonably failed to take advantage of preventative or corrective opportunities provided by the employer." *Burrell v. Star Nursery, Inc.*, 170 F.3d 951, 955 (9th Cir. 1999). To prove that Mr. Butler unreasonably failed to take advantage of its anti-discrimination policies, G4S attached exhibits, including witness declarations and its employee handbook. ECF No. 12 at 9–13; *see* ECF Nos. 12-1–12-3, 12-7.

The elements of an *Ellerth* affirmative defense are not obvious from the face of Mr. Butler's Complaint. Additionally, the witness declarations and employee handbook that G4S supplied are not properly considered on a 12(b)(6) motion, as they are not subject to judicial notice, and they were not referenced in the Complaint. Therefore, Mr. Butler's discrimination claims cannot be dismissed on the basis of this affirmative defense. The *Ellerth* defense is better argued at trial or on a motion for summary judgment.

## II. Mr. Butler's Claims

### A. Disparate Treatment

Mr. Butler has alleged disparate treatment under Title VII and the WLAD. A claim for disparate treatment is "the most easily understood type of discrimination." *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977 (1988) (quoting *Int'l Broth. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)). To establish a Title VII disparate treatment claim, the plaintiff must plead and prove that he was treated differently on the basis of his race, color, religion, sex, or

national origin.  *See* 42 U.S.C. § 2000e–2; *Watson*, 487 U.S. at 985.  Specifically, he must show that: "(1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000).  Whether these elements are met is best decided by a factfinder on a full record.  *Id*.  Under the WLAD, the elements for establishing a disparate treatment claim are nearly identical.  *See Billings v. Town of Steilacoom*, 408 P.3d 1123, 1135–36 (Wash. Ct. App. 2017) (citing *Johnson v. Dep't of Soc. & Health Servs.*, 907 P.2d 1223 (1996)).

The first element that Mr. Butler must satisfy is that he is a member of a protected class.  Mr. Butler satisfies this element by asserting that he is an African American man.  ECF No. 1 at 2.  Next, Mr. Butler must allege facts that illustrate he was qualified for the position.  Mr. Butler satisfies this requirement by asserting that he was hired and eventually promoted by G4S.  *Id*. at 2, 4.

Third, Mr. Butler must prove that he was subject to an adverse employment action.  G4S argues that Mr. Butler has not alleged facts to support this element, as he was promoted by G4S in his time there.  Additionally, G4S claims that Mr. Butler was not fired, but that he voluntarily left G4S once G4S's contract with McCain ended.  See ECF No. 12 at 2.  However, this factual argument contradicts the Complaint.  Mr. Butler alleges in his Complaint that he was terminated by Mr.

Harden. ECF No. 1 at 7. The Court must take all of the factual allegations by the nonmoving party in the Complaint as true when deciding the instant motion, and therefore rejects G4S's argument that it took no adverse action against Mr. Butler at this stage.

Finally, Mr. Butler must allege facts to show that other, non-protected employees were treated differently. In his Complaint, Mr. Butler fails to allege any facts related to the termination of other employees. He does not state whether non-protected employees kept their jobs. However, for reasons explained *supra*, it is proper for the Court to consider the EEOC charges filed by Mr. Butler when deciding G4S's Motion to Dismiss. In the EEOC charge signed February 5, 2019, Mr. Butler states, "To my knowledge, I was the only employee terminated before the conclusion of our March 5, 2018 contract and the only employee prohibited from relocation to a new site or prohibited from being rehired." ECF No. 12-6. Accepting all of Mr. Butler's allegations as true and drawing all reasonable inferences in his favor, Mr. Butler has stated a claim for disparate treatment under Title VII and the WLAD.

### B. Hostile Work Environment

Mr. Butler also has alleged a hostile work environment claim under Title VII and the WLAD. Under Title VII, the plaintiff establishes a hostile work environment based on race when he shows that he was subject to verbal or physical conduct of a racial nature, the conduct was unwelcome, and the conduct was

"sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Vasquez v. Cty. of L.A.*, 349 F.3d 634, 342–43 (9th Cir. 2003) (using Title VII sexual harassment cases to help define "severe and pervasive" conduct in a race discrimination hostile work environment case); *see also Fuller v. Idaho Dept. of Corrections*, 865 F.3d 1154, 1161 (9th Cir. 2017) (quoting *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995)) (discussing hostile work environment based on sex in violation of Title VII). To decide whether conduct is severe or pervasive, courts must look at "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Vasquez*, 349 F.3d at 642.

To survive a Rule 12(b)(6) motion, Mr. Butler first must allege facts to show that he was subject to verbal or physical conduct of a racial nature. In his Complaint, Mr. Butler asserts that, on many specific occasions, Mr. Harden used racial slurs to address him, which included "coon," "nigger," "jigaboo," and "spook." Additionally, Mr. Harden allegedly attempted to persuade Mr. Butler's supervisor not to hire Mr. Butler for a supervisor position because of his race. ECF No. 1 at 4. Mr. Harden also allegedly called Mr. Butler in the middle of the night to harass Mr. Butler, again using racial slurs. *Id*. at 5. Therefore, Mr. Butler has alleged sufficient facts to establish verbal conduct of a racial nature.

Secondly, Mr. Butler's Complaint must contain allegations showing that the harassment was unwelcome.  Mr. Butler states that he consistently reported Mr. Harden's conduct, specifically alleging several instances in which he either told Mr. Charmley or Mr. Harden's supervisor about Mr. Harden's use of racial slurs.  Additionally, Mr. Butler claims that he asked Mr. Harden not to use racial slurs when speaking to him.  *See* ECF No. 1 at 3.  Therefore, Mr. Butler has alleged sufficient facts to demonstrate that the comments were unwelcome.

Third, Mr. Butler's Complaint must contain allegations that show the conduct complained of was "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment." *Vasquez*, 349 F.3d at 342–43.  Mr. Butler's Complaint contains allegations of verbal harassment from 2016 to the day he was fired in 2018.  Some of the racial comments complained of included threatening language, like, "What the fuck is your problem, nigger?" and, "Fuck man, you nigger."  ECF No. 1. at 6, 3.  The intense nature of these comments supports a finding that the comments were "severe" for the purposes of Title VII.  Additionally, Mr. Harden's late-night telephone call, in which he confronted Mr. Butler for reporting his previous racial slurs, is evidence of severe behavior, violative of Title VII.  Mr. Butler explains that the call made him nervous, and that he was "concerned" about the call's "middle of the night nature." *See* ECF No. 1 at 5.  Finally, Mr. Butler claims that Mr. Harden attempted to persuade management not to hire Mr. Butler for an open supervisor position

because of his race. *Id*. at 4. While Mr. Butler eventually received the supervisor role, this allegation supports a finding that Mr. Harden's conduct was severe in nature. Therefore, the Court concludes that Mr. Butler has stated sufficient facts at this stage to support a claim for hostile work environment based on race under Title VII.

The elements for a hostile work environment under the WLAD are closely related to Title VII's elements. However, under the WLAD, a plaintiff also must plead and prove that the harassment is imputed to the employer. *See Washington v. Boeing Co.*, 19 P.3d 1041, 1048 (Wash. 2000). The discriminatory conduct of a supervisor or fellow employee may be imputed to the employer if the employer "(a) authorized, knew, or should have known of the harassment and (b) failed to take reasonably prompt and adequate corrective action." *Glasgow v. Georgia-Pacific Corp.*, 693 P.2d 708, 712 (Wash. 1985).

Mr. Butler alleges that he reported Mr. Harden's racist comments on numerous occasions. *See, e.g.*, ECF No. 1 at 5. He also claims that a fellow employee reported Mr. Harden's use of racial slurs. *Id*. at 6. These factual allegations, when taken in the light most favorable to Mr. Butler, demonstrate that G4S either knew or should have known of Mr. Harden's racially charged comments. According to Mr. Butler, the company did not take prompt or adequate action against Mr. Harden. *See id*. at 20, 22. Therefore, Mr. Butler has stated a

claim for which relief can be granted for hostile work environment under the WLAD.

## C. Retaliation

Mr. Butler alleges that Defendants retaliated against him in violation of Title VII and the WLAD. Title VII forbids retaliating against an individual for engaging activity that is protected by Title VII. 42 § U.S.C. 2000e–3(a). To succeed on a claim of retaliation, the plaintiff must prove that he engaged in a statutorily protected activity, that the defendant took an adverse employment action against him, and that his protected activity was the but-for cause of the adverse action taken against him. *See Ray v. Henderson*, 217 F.3d 1234,1240 (9th Cir. 2000); *Univ. of Tex. SW. Med. Cent. v. Nassar*, 570 U.S. 338, 352 (2013) (establishing that but-for causation is applicable to Title VII retaliation claims).

The WLAD also prohibits retaliation against employees for protected activity and requires a similar showing from the plaintiff to establish a prima facia case. *See* RCW 49.60.210(1); *Crownover v. State ex rel. Dept. of Transp.*, 265 P.3d 971, 980 (Wash. Ct. App. 2011). To state a claim of retaliation under the WLAD, the plaintiff must plead that (1) he engaged in protected activity, (2) the employer took adverse employment action against him, and (3) "there is a causal link between the protected activity and the adverse action." *See Crownover*, 265 P.3d at 980.

To state a claim for retaliation under both Title VII and the WLAD, Mr. Butler must first allege that he engaged in protected activity. Mr. Butler engaged in protected activity when he reported discriminatory statements to his employer. Next, Mr. Butler must assert that G4S took an adverse action against him. Mr. Butler claims that G4S terminated his employment contract, which constitutes an adverse action.

Finally, Mr. Butler must allege facts that illustrate the adverse action was taken because of his protected activity, reporting Mr. Harden. According to Mr. Butler's Complaint, on October 15, 2017, Mr. Harden stated he would find a way to fire Mr. Butler if Mr. Butler reported him for the late-night telephone call. ECF No. 1 at 6. Mr. Butler reported Mr. Harden for the call, and continually checked in with Mr. Harden's supervisor to see if anything would be done about his complaint. *See id*. Mr. Harden fired Mr. Butler on March 2, 2018, again using racial slurs when addressing Mr. Butler. *Id*. at 7. According to Mr. Butler's February 2019 EEOC charge, Mr. Harden did not fire anybody except Mr. Butler when the McCain contract ended. ECF No. 12-6 at 1. Mr. Butler allegedly was the only employee not allowed to relocate to another G4S worksite. *See id*.; ECF No. 1 at 7.

Taken in the light most favorable to Mr. Butler, the facts alleged demonstrate that Mr. Harden terminated Mr. Butler for reporting his slurs and

racially discriminatory behavior. Therefore, Mr. Butler's allegations are sufficient to state a claim for retaliation under Title VII and the WLAD.

### D. Wrongful Termination in Violation of Public Policy

"The tort for wrongful discharge in violation of public policy is a narrow exception to the at-will doctrine." *Peiffer v. Pro-Cut Concrete Cutting and Breaking Inc.*, 431 P.3d 1018, 1031 (Wash. Ct. App. 2018) (quoting *Becker v. Cmty. Health Sys., Inc.*, 359 P.3d 746 (Wash. 2015)). The purpose of the tort is to prevent employers from subverting important mandates of public policy through the at-will doctrine. *Id*. Given the narrow construction of this tort, the Washington State Supreme Court has explained that there are four specific scenarios in which the tort is applicable. *Becke*r, 359 P.3d at 749. "When the plaintiff's case does not fit neatly within one of these scenarios, a more refined analysis may be necessary . . . ." *Id*. The four scenarios identified by the State Supreme Court are:

> (1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation; (2) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and (4) where employees are fired in retaliation for reporting employer misconduct, i.e., whistleblowing.

*Id*.

As this Court explained in its discussion of Mr. Butler's retaliation claim, Mr. Butler has properly alleged that Mr. Harden retaliated against him for reporting race discrimination. Retaliation for reporting employer misconduct is

one of the few scenarios in which Washington courts will recognize a claim for wrongful termination in violation of public policy. Therefore, Mr. Butler has stated a plausible claim for relief for wrongful termination in violation of public policy.

### E. Wrongful Withholding of Wages

Mr. Butler claims that G4S's actions constitute wrongful withholding of wages, in violation of Washington law. *See* RCW 49.52.050; RCW 49.52.070. An employer is liable for wage withholding when they "'[w]ilfuly and with intent to deprive the employee of any part of his or her wages' pay[] the employee less than the wage to which the employee is entitled." *Jumamil v. Lakeside Casino, LLC*, 319 P.3d 868, 877 (Wash. Ct. App. 2014) (quoting RCW 49.52.050(1)–(2)). For an employer to be civilly liable for wage withholding, the employer must have knowledge of any wage withholding policies and fail to correct any improper withholding. *Id*.

Mr. Butler's complaint only contains two allegations related to his wage withholding claim. His first allegation deals with the overtime hours he worked while at G4S: "From approximately June 2016 through June 2017, Butler frequently worked 60 or more hours per week for G4S at McCain . . . ." ECF No. 1 at 3. His second allegation states that he "was not paid for approximately 100 hours of overtime, which Harden told him he was not owed because it was 'non-billable overtime' or words to that effect." *Id*. at 8. Mr. Butler does not state that

the alleged wage withholding was caused by company policies, nor does he state

facts to support an argument that G4S knew of the unlawful withholding.  Without

more, Mr. Butler does not state a viable claim for wage withholding, and that claim

is dismissed without prejudice.

### III.    Motion to Strike

In his Response to G4S's Motion to Dismiss, Mr. Butler asks the Court to

strike portions of G4S's Motion, as well as exhibits submitted in conjunction with

the Motion.  *See* ECF No. 23 at 15.  Pursuant to Federal Rule of Civil Procedure

12(f), "The Court may strike from a pleading an insufficient defense or any

redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).

The purpose of the Rule is to "avoid the expenditure of time and money that must

arise from litigating spurious issues by dispensing with those issues prior to trial."

*Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).  Mr.

Butler has asked the Court to strike exhibits and statements within G4S's Motion

to Dismiss, rather than portions of a pleading.

It is not apparent that Rule 12(f) applies to statements made within a motion,

or exhibits attached to a motion.  *See Colon v. Blades*, 268 F.R.D. 143, 146 (D. PR

2010).  Such materials are not "pleadings" as defined by the Federal Rules of Civil

Procedure.  *See id.*; Fed. R. Civ. P. 7(a).  However, Rule 12(d) states, "If, on a

motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to

and not excluded by the court, the motion must be treated as one for summary

judgment under Rule 54." Fed. R. Civ. P. 12(d). The Court has discretion to exclude documents submitted in conjunction with a motion to dismiss so as not to convert the motion to a motion for summary judgment. *See Yakima Valley Memorial Hosp. v. Wash. State Dept. of Health*, 654 F.3d 919, 925 n.6 (citing *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007)); *Holmberg v. Vail*, No. C 11–5449 BHS/KLS, 2012 WL 380043, at *6 (Jan. 3, 2012 W.D. Wash.) ("[I]t is up to the Court to decide whether to consider or reject such material."). " The Court finds that the declaration of Chris Phillips, ECF No. 12-1, G4S's Employee Handbook, ECF No. 12-2, G4S's Ethics Code, ECF No. 12-3, "Consolidated Answer Sheet," ECF No. 12-4, "Voluntary Resignation," ECF No. 12-5, and the Affidavit of Frank Plick, ECF No. 12-7 are outside the pleadings. On that basis, the Court excludes them and declines to convert G4S's motion to dismiss into a summary judgment motion. *See* Fed. R. Civ. P. 12(d). However, for reasons this Court already has stated, Mr. Butler's February EEOC charge, ECF No. 12-6, is within the pleadings, and under Rule 12(d) the Court may consider it on G4S's Motion to Dismiss without converting the motion to dismiss into a motion for summary judgment.

Accordingly, **IT IS HEREBY ORDERED:**

1.     Defendant's Motion to Dismiss, **ECF No. 12**, is **GRANTED IN PART AND DENIED IN PART.** Plaintiff's wage withholding claim, only,

is **DISMISSED WITHOUT PREJUDICE**.  All other claims remain

pending.

2.      Plaintiff's Motion to Strike is **GRANTED IN PART AND DENIED**

**IN PART**.  Exhibits at ECF Nos. 12-1, 12-2, 12-3, 12-4, 12-5, and 12-7 are

**STRICKEN** from the record.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this

Order and provide copies to counsel.

**DATED** November 14, 2019.


                        *s/ Rosanna Malouf Peterson*
                    ROSANNA MALOUF PETERSON
                       United States District Judge